793 A.2d 112 (2002)
349 N.J. Super. 183
STATE of New Jersey, Plaintiff-Respondent,
v.
Robert B. FULFORD, IV, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 21, 2002.
Decided March 18, 2002.
*114 Starr, Gern, Davison & Rubin, Roseland, attorneys for appellant (Kenneth E. Bellani, Livingston, on the brief).
John B. Dangler, Morris County Prosecutor, attorney for respondent (Joseph *115 Connor, Jr., Assistant Prosecutor, on the brief).
Before Judges CONLEY, LEFELT and LISA.
*113 The opinion of the court was delivered by LEFELT, J.A.D.
The State charged defendant Robert Fulford with speeding, drunk driving and an indictable weapons offense. Defendant argues his constitutional right to a speedy trial was violated because the State did not try the driving charges until after defendant completed Pre Trial Intervention (PTI) for the weapons offense. We reject defendant's arguments and affirm.

I.
We recite the pertinent facts and procedural history together. On January 31, 1998, defendant was charged with speeding, driving while intoxicated and possession of a switchblade under circumstances not manifestly appropriate for lawful use, N.J.S.A. 2C:39-5d. When defendant appeared before the Mt. Olive Municipal Court on February 4, 1998, he was advised that the case was transferred to Superior Court because the weapon charge was an indictable offense.
Defendant first appeared in Superior Court on February 18, 1998. By December 7, 1998, the weapon charge was postponed and defendant was admitted into PTI. Pursuant to PTI, defendant began twelve months of supervised probation with urine testing and community service. Defendant successfully completed PTI and on February 4, 2000, the weapon charge was formally dismissed. Soon thereafter, defendant was notified to reappear in the Mt. Olive Municipal Court to answer the speeding and driving while intoxicated charges.
Defendant requested one adjournment on March 13, 2000, and the case was scheduled for trial on May 1, 2000. On May 25, 2000, defendant moved for the first time to dismiss the motor vehicle driving charges on speedy trial grounds. On September 18, 2000, Municipal Court Judge Philip J. Maenza denied defendant's speedy trial motion, and defendant conditionally pled guilty to driving while intoxicated, after the speeding charge was merged. The judge suspended defendant's driving privileges, fined and surcharged defendant, and stayed the entire sentence pending appeal to the Law Division.
On February 6, 2001, Judge N. Peter Conforti denied defendant's appeal, but remanded the case to Mt. Olive Municipal Court because defendant's guilty plea lacked a factual basis. For unknown reasons, Mt. Olive transferred the matter to Roxbury Municipal Court. On April 2, 2001, defendant once again conditionally pled guilty, this time before Judge Carl F. Wronko of Roxbury Municipal Court who again fined, surcharged and suspended defendant's driving privileges and stayed all penalties including the license suspension, pending appeal to this court. Defendant appeals to us from Roxbury Municipal Court.

II.
Preliminarily, we note that defendant's appeal directly to the Appellate Division, without seeking our permission, was improper. R. 2:2-3(b). Technically, defendant was obligated to re-appeal to the Law Division, before appealing to us. R. 3:23-1 to -9. However, we have the Law Division's decision on defendant's speedy trial contention, and the State neither opposes nor has been handicapped by defendant's *116 direct appeal. Consequently, we elect to decide the matter on the merits.
Defendant strongly argues that his constitutional right to a speedy trial was violated and, thus, the driving while intoxicated conviction must be reversed. Both parties agree that a flexible balancing test is used to assess speedy trial claims. State v. Douglas, 322 N.J.Super. 156, 170, 730 A.2d 451 (App.Div.), certif. denied, 162 N.J. 197, 743 A.2d 849 (1999). The factors balanced include (1) the length of the delay, (2) the reason(s) for the delay, (3) any assertion by the accused of speedy trial rights, and (4) any prejudice to the accused from the delay. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117-18 (1972); State v. Gallegan, 117 N.J. 345, 354-58, 567 A.2d 204 (1989). These four factors are also applied when defendant asserts a speedy trial claim arising from delay in a municipal court drunk driving prosecution. State v. Gallegan, supra, 117 N.J. at 355, 567 A.2d 204; State v. Farrell, 320 N.J.Super. 425, 446, 727 A.2d 501 (App.Div.1999); State v. Prickett, 240 N.J.Super. 139, 143, 572 A.2d 1166 (App.Div.1990).
Judge Conforti weighed the four Barker v. Wingo factors and concluded that "when balanced against the fact that this defendant gets the benefit of having an indictable offense dismissed so he avoids the adverse consequences of a criminal history I'm not satisfied that these factors have been met." Defendant argues that the Law Division judge "erroneously" considered the benefit defendant derived from PTI, and asserts that this factor "has absolutely no place in the analysis of whether or not the Defendant's right to a speedy trial has been violated." We proceed to analyze the four Barker v. Wingo factors to determine whether the Law Division should have dismissed the drunk driving conviction. We start with the length of the delay.

A. Length of delay
The constitutional right to a speedy trial attaches upon defendant's arrest. State v. Szima, 70 N.J. 196, 199-200, 358 A.2d 773, certif. denied 429 U.S. 896, 97 S.Ct. 259, 50 L. Ed.2d 180 (1976). The State admits that the delay here was 32 months from the January 31, 1998, arrest until September 18, 2000, when defendant plead guilty in Mt. Olive Municipal Court.
We, of course, recognize this State's strong policy for "quick and thorough resolution of [driving while intoxicated] cases." State v. Farrell, supra, 320 N.J.Super. at 446, 727 A.2d 501. Municipal courts should attempt to prosecute drunk driving cases within sixty days. State v. Perkins, 219 N.J.Super. 121, 124, 529 A.2d 1056 (1987).
While defendant claims the 32 month delay was extraordinarily lengthy, it was defendant who applied for PTI and spent fourteen months successfully completing the program. N.J.S.A. 2C:43-12; R. 3:28 (criminal proceedings can be postponed against a defendant in PTI for "a period not to exceed thirty-six months" R. 3:28(b)). Furthermore, defendant cannot point to any unreasonable conduct that caused delay during the eleven months the State took to process defendant from his arrest, through municipal court to indictment and into PTI. The State, however, also took another seven months to bring defendant to trial in municipal court after defendant completed PTI.
The entire delay in this case was caused by the State's decision to withhold prosecution of the drunk driving case until after PTI. Once the State decided to prosecute the drunk driving charges, defendant requested but one adjournment to obtain counsel. This case is, thus, unlike the *117 usual prosecution involving a speedy trial issue where the delay is caused by actions taken in the case sought to be dismissed.
Here, defendant's indictable weapon charge has been dismissed and he complains about delay attributable to the non-indictable drunk driving charge. In that regard, the State during the twenty-five months defendant proceeded toward and successfully completed PTI, either consciously determined not to try defendant on the municipal court charges, or worse, ignored defendant's non-indictable charges.
For purposes of this analysis, therefore, we must attribute all of the thirty-two month delay to the State. We proceed to analyze the State's reasons for the delay in prosecuting the non-indictable drunk driving charge to determine whether any portion of the delay is "reasonably explained and justified." State v. Detrick, 192 N.J.Super. 424, 426, 470 A.2d 933 (App.Div.1983).

B. Reasons for the delay
There are situations where double jeopardy and fundamental fairness concerns require cooperation between municipal courts and county prosecutors. State v. Yoskowitz, 116 N.J. 679, 709, 563 A.2d 1 (1989); State v. Dively, 92 N.J. 573, 589, 458 A.2d 502 (1983). In Dively, for example, the Court directed "municipal court judges to withhold actions on drunk driving incidents involving personal injuries until clearance to proceed has been obtained from the county prosecutor." Id. at 590, 458 A.2d 502. The State admits, however, that double jeopardy was not a serious obstacle in this case. Certainly, the drunk driving charge is completely different from possession of a switchblade, and each charge could have been tried separately without any mention of the other.
The State argues that fundamental fairness concerns justified its action in holding the driving offenses until after PTI. Fundamental fairness is not a static concept. Callen v. Sherman's Inc., 92 N.J. 114, 134, 455 A.2d 1102 (1983). In fact, it is an "elusive concept" whose "exact boundaries are undefinable." State v. Yoskowitz, supra, 116 N.J. at 705, 563 A.2d 1. The State argues that if the motor vehicle charge had been tried and defendant later failed to complete PTI, he might have claimed that the motor vehicle prosecution was the State's one chance to prosecute him for the entire incident. He might have argued that multiple prosecutions for the same incident are fundamentally unfair.
The fundamental fairness doctrine in the double jeopardy context is grounded on fairness and defendant's reasonable expectations. State v. Gregory, 66 N.J. 510, 518, 333 A.2d 257 (1975); State v. Currie, 41 N.J. 531, 539, 197 A.2d 678 (1964). In the instant case, for the prosecution's argument to have any currency, defendant would have to reasonably expect that the indictable and non-indictable charges would be tried together. E.g., State v. DeLuca, 108 N.J. 98, 111, 527 A.2d 1355 (1987), cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L. Ed.2d 358 (1987)(where the Supreme Court discussed a Superior Court judge presiding over a death by auto case while trying lesser offenses simultaneously as a municipal court judge). Unless joinder would be prejudicial to the defense or State, R. 3:15-3 requires the joining of a "pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode." A motion for relief from joinder, constitutes "a waiver of any claim against twice being placed in jeopardy that would not have arisen had the defendant's request been denied." R. 3:15-3(b).
*118 Thus, upon receipt of the charges against defendant, the prosecutor should have promptly determined whether to retain the drunk driving charge for prosecution with the indictable offense, or return the charge for trial in municipal court. If the prosecutor elects not to return the charge to municipal court and defendant is about to enter PTI, the timing of the drunk driving prosecution should be broached when the designated PTI judge is considering postponing proceedings against defendant under R. 3:28. The prosecutor should make known to the judge his or her position regarding when the drunk driving case should be tried, and the judge should also solicit defendant's position regarding any speedy trial request. If the prosecutor argues, as in this matter, that the drunk driving charge must be held until after PTI, the double jeopardy and fundamental fairness implications of such conduct should also be explored at this time. A defendant can waive double jeopardy and fundamental fairness protections. State v. Lane, 279 N.J.Super. 209, 214-15, 652 A.2d 724 (App.Div.), certif. denied, 141 N.J. 94, 660 A.2d 1193 (1995).
None of this occurred in this case. Instead, the State merely held the municipal charges until defendant completed PTI.

C. Speedy trial request
Nevertheless, defendant failed to assert his speedy trial rights until May 25, 2000, when he moved to dismiss the drunk driving charges. Thus, defendant waited 28 months after his arrest to assert these rights. While an accused has no duty to bring himself or herself to trial, it is difficult to prevail on a speedy trial claim without a timely assertion of rights. State v. Douglas, supra, 322 N.J.Super. at 171, 730 A.2d 451. The failure to assert such a right makes "it difficult for a defendant to prove that he was denied a speedy trial." State v. Szima, supra, 70 N.J. at 200, 358 A.2d 773.
Furthermore, defendant was represented on the indictable charge and there was no bar to defendant seeking a speedy trial through that attorney, whether or not the public defender could represent defendant in municipal court. Moreover, defendant now claims that upon arrest he was so positive that he would shortly lose his license that he told his employer and as a result lost his employment. Yet, after defendant lost his job, defendant still neither inquired as to when he would be prosecuted on the driving charges nor demanded a speedy trial.

D. Prejudice
Defendant admits that this delay did not impair his ability to defend the charges. Such a consequence would be the weightiest form of prejudice. Barker v. Wingo, supra, 407 U.S. at 532, 92 S.Ct. at 2192, 33 L. Ed.2d at 119. Instead, defendant claims that his new self-defense instruction business will be impaired or destroyed by a license suspension at this time, jeopardizing his ability to support his young family. In addition, he argues that if his license suspension was imposed earlier it could have been served while he was out of work. Prejudice is not limited to impairment of a defendant's defense. State v. Smith, 131 N.J.Super. 354, 368 n. 2, 330 A.2d 29 (App.Div.1974), aff'd o.b., 70 N.J. 213, 358 A.2d 782 (1976). Prejudice can include "employment interruptions, public obloquy, anxieties concerning the continued and unresolved prosecution, the drain on finances, and the like." Ibid. (citing Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L. Ed.2d 183 (1973)).

III. Weighing the four factors
Defendant relies on State v. Farrell, 320 N.J.Super. 425, 453, 727 A.2d 501 (App.Div.1999), *119 and argues that, as in Farrell, the delay was so "egregious that no showing of prejudice is required" for defendant to prevail on his speedy trial argument. Ibid. Defendant also points to Farrell's statement that "when the delay in concluding a trial is excessively long by any measure,... the burden upon defendant to satisfy the other factors is correspondingly diminished." Ibid.
Farrell was a much more egregious situation, however, than the case we are considering. In Farrell, defendant complained directly about delay in prosecuting a drunk driving charge. There were twelve postponements, seven attributable to the State and the rest to municipal court. None of the postponements could be fairly attributable to defendant and only two of the State's seven postponements were "reasonably explained and justified." Id. at 450, 727 A.2d 501. In addition, Farrell continually invoked his right to speedy trial, "at the outset and on eight ensuing occasions." Id. at 452, 727 A.2d 501. Moreover, except for problems with the State's failure to provide timely discovery and respond to defense motions, Farrell was at all times prepared to proceed with trial. The conduct of the State in Farrell's case was properly considered a violation of fundamental fairness. Id. at 453. Farrell is distinguishable from this matter.
The four factors to be balanced in finding a deprivation of defendant's right to a speedy trial are related and must all be weighed together. State v. Szima, supra, 70 N.J. at 201, 358 A.2d 773. Except in the most egregious of cases, the length of the delay and the absence of any explanation for the delay cannot alone justify a decision. Ibid. Besides the prosecutor's conduct, we must also weigh in the balance defendant's conduct and the impact of the delay on him. Ibid.
Here, there was a relatively lengthy delay caused by the State's retention of the municipal court charges until PTI was resolved, and the State admits that its double jeopardy justification was insubstantial. In addition the record is insufficient to determine the merits of the State's fundamental fairness justification. Nevertheless, defendant did satisfactorily complete PTI during the delay, achieve dismissal of the indictable charges, and through most of the delay fail to request a municipal court trial or even make an inquiry concerning the pendency of the drunk driving charge. Most likely, defendant was or should have been grateful to remain driving throughout this entire period. Indeed, defendant has retained his license throughout the appeal period of over four years from the offense.
The only prejudice asserted deals with personal inconveniences and possible financial losses that are almost always associated with driving suspensions no matter when they occur. It is always inconvenient to lose ones license. Had the suspension been served earlier, shortly after defendant lost his employment, for example, defendant's job search activities would have been hampered. For the reasons we have explained, therefore, we cannot conclude that Judge Conforti abused his discretion in rejecting defendant's speedy trial contention.
Affirmed.